## Case No. 14,181.

### The TRITON.

[1 Blatchf. & H. 282.] [1]

District Court, S. D. New York.   Jan. 14, 1832.

SEAMEN—WAGES—SHIPPING ARTICLES.

Parol proof offered by a ship-owner to vary the voyage described in the shipping articles, is not admissible in an action in rem by the seamen for their wages.

This was a libel in rem for seamen's wages. The libellants alleged that they shipped at Havana, on a voyage "to Cronstadt, in Russia, and thence to a port of discharge in the United States," at stipulated wages. The claimants (the owners of the ship) alleged, that the agreement was only for a voyage to Cronstadt, and had been altered without their knowledge or consent, on the home voyage of the ship. The shipping articles, as produced, corresponded with the allegations of the libellants; and the claimants offered to prove, by parol, that the words following "Russia" were inserted after the articles were signed, and whilst the vessel was on her return voyage, and that the agreement with the libellants was to terminate at Russia. The libellants objected to the proof as incompetent, but the court ordered it to be read de bene esse, reserving, till the final hearing, the question of its admissibility.

Erastus C. Benedict, for libellants.
John B. Staples, for claimants.

BETTS, District Judge. There is a disaccordance in the statements of the claimants' witnesses, which weakens the force of their testimony. It is also contradicted, in some important particulars, by the evidence on the part of the libellants; and, upon the proofs before me, supposing the claimants' depositions to be admissible, I cannot say that the articles, if altered at all, were altered on the return voyage of the ship, and not before she left Havana. But, if the articles have been altered, is it competent for the owners to impugn them as against the seamen? The statute enjoins upon the master the duty of having written articles subscribed by his seamen, fixing the voyage and wages. The English act, from which ours is borrowed, declares the contract to be "conclusive and binding;" but those terms are not introduced into our statute, though the provision that the contract and log-book shall be produced, to ascertain the wages due, is tantamount to them in effect. The interpretation of the contract, accordingly, has been, in this country, that a seaman is concluded by the written agreement as to the amount of wages, and cannot recover more than is stipulated in the contract (Bartlett v. Wyman, 14 Johns. 260; Johnson v. Dalton, 1 Cow. 543); and it is believed that no case can be produced in which

1 [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

a seaman has been permitted to disregard the written contract, unless he has satisfied the court it was executed through fraud or imposition practised upon him. Though it is out of his custody, and in that of those opposed in interest to him, the courts will listen to no proof, however clear and full, setting up an agreement different from the written one, until that is shown to be void as against the seaman. The objection to such testimony, when offered by the owner or master against a seaman, would be of still greater force. They are the parties who propose, prepare and hold the contract. Alterations can, therefore, be rarely made in it, without their knowledge or to their prejudice. On the contrary, the men cannot be presumed to have access to it after their signature, nor to have capacity to change its terms, or annex new agreements to it, even if disposed to do so; and it would be subversive of every precaution and safeguard designed for the protection of the crew, to permit the owner to curtail or vary, by parol proof, the engagements of the written articles, or substitute different stipulations in their place. This would, in effect, nullify the act of congress; for, the obligation upon the master and owner to enter into a written contract with their crew, would be useless, if they might afterwards efface it by parol evidence. When, therefore, the owner produces the written contract in court, it must have the effect "to ascertain the matter in dispute," unless he is enabled to prove that it has been fraudulently changed by the seamen.

In the present case, the agreement was deliberately entered into, and the owners now insist upon all the provisions that are binding on the seamen, as in full force against them, and have also excepted to, and procured the exclusion of evidence offered by the seamen to show that the real contract for wages was different from that inserted in the articles. They furthermore claim a forfeiture of wages because of a breach of the articles by the seamen. There would be something revoltingly incongruous in adjudging, for the benefit of the owners, the contract to be conclusive against the mariners, as to wages or other privileges, and yet in exonerating the owners from one of its most important provisions in favor of the seamen, upon loose oral proofs that that provision was not originally part of the agreement. The rules of the common law in regard to parol proof in contradiction of a written contract, ought not to be relaxed, in behalf of an owner or master, with respect to shipping articles. When proceeded upon in courts of law, they are construed with all the strictness of other agreements, even as against sailors. Webb v. Duckingfield, 13 Johns. 390. Applying the like principle in favor of the seamen, the ship-owner cannot substitute an oral agreement in place of one required by law to be in writing (Starkie, Ev. pt. 4, p. 999), nor vary the written contract by any species of

parol evidence (Id. p. 1,001), except in cases of fraud or duress.

I shall, accordingly, decree wages to the libellants for the home voyage, according to the shipping articles as presented in court, with costs.